**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

John R. Griffin, Jr.

     v.                           Civil No. 09-cv-00250-SM

New Hampshire Department of
Employment Security et al.

## REPORT AND RECOMMENDATION

Before the court is the Amended Complaint (doc. no. 6) filed
by John R. Griffin, Jr., alleging that defendant Speare Memorial
Hospital ("Hospital"), acting through its agents, Linda Nestor,
Laurie Bolognani, and Peter Kritkos ("Hospital defendants"),
improperly fired him in violation of his federal constitutional
rights, and that the New Hampshire Department of Employment
Security ("NH DES"), through its Certifying Officer, Margaret
Garrison, violated his First Amendment right to free speech in
determining that a statement about politics made to a patient
could be considered "misconduct" for the purposes of denying
eligibility for unemployment compensation.  In addition, Griffin
claims that the Hospital and its attorneys, defendants R. Matthew
Cairns and Gallagher, Callahan & Gartrell, P.C., have defamed
him.  The matter is before me for preliminary review to
determine, among other things, whether the Amended Complaint
states any claim upon which relief might be granted.  See 28
U.S.C. § 1915(e)(2)(B); United States District Court District of

New Hampshire Local Rule ("LR") 4.3(d)(1) (authorizing magistrate judge to conduct a preliminary review of cases filed pro se).

Also pending is Griffin's motion for an order directing the release of unemployment benefits (doc. no. 3). For reasons set forth below, this motion should be denied as moot. In addition, accepting this Report and Recommendation will also render moot Griffin's request to add a punitive damages claim against the Hospital defendants, as set forth more fully below.

Standard of Review

Under this Court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review. LR 4.3(d)(1). In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly [pleaded]." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375,

381 (2003) (courts may construe pro se pleadings to avoid
inappropriately stringent rules and unnecessary dismissals).  This
review ensures that pro se pleadings are given fair and
meaningful consideration.

To determine if a pro se complaint should be dismissed for
failing to state a claim on which relief could be granted, the
Court must consider whether the complaint, construed liberally,
Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'"  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct.
1937, 1949 (2009) (citation omitted).  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Id.  Inferences
reasonably drawn from the plaintiff's factual allegations must be
accepted as true, but the Court is not bound to credit legal
conclusions, labels, or naked assertions, "devoid of 'further
factual enhancement.'"  Id. (citation omitted).  Determining if a
complaint states a plausible claim for relief is a "context-
specific task that requires the reviewing court to draw on its
judicial experience and common sense."  Id. at 1950 (citation
omitted).

Background

For six years prior to May 19, 2009, Griffin worked for the
Hospital as a radiology technician.  Prior to May 19, Griffin had
a conversation with a patient in which he recounted a news story
regarding the number of firearms purchases that had occurred in
the first quarter of 2009.  The patient complained about the
conversation, and Linda Nestor, Director of the Radiology
Department, contacted the patient on May 19 to investigate.  The
patient said that Griffin had made remarks about President Obama
and had reported that he was stocking up on food and weapons.
Nestor did not ask Griffin to provide his side of the story,
concluding that she did not need to investigate further because
Griffin had made inappropriate comments in the past.

On May 19, 2009, Nestor and the Hospital's Human Resource
Director, Laurie Bolognani, fired Griffin.  Peter Kritkos, the
Hospital's Chief Financial Officer, sent Griffin a termination
letter.  Griffin received notice that he was fired for making
inappropriate remarks to a patient about guns and politics.

Griffin has alleged that the Hospital treated him
differently than female employees.  The Hospital did not fire a
female nurse who picked fights with patients and used caustic,
demeaning language with them; did not fire a female nurse who

4

stole barbiturates; and did not fire a nurse who came to work under the influence of alcohol.

After he was fired, Griffin filed a claim for unemployment benefits. Griffin's claim was denied on July 15, 2009, by Margaret Garrison, an NH DES certifying officer. From the facts alleged, I conclude that Garrison received information from the Hospital detailing that Griffin had been fired for misconduct, including an inappropriate conversation with a patient about guns and politics. Because Garrison found that Griffin was terminated for misconduct, she concluded that he was ineligible to receive unemployment compensation upon the date of his termination pursuant to N.H. Rev. Stat. Ann. ("RSA") § 282–A:32, I(b).

Griffin filed an administrative appeal of the benefit denial. In August 2009, following an evidentiary hearing, the NH DES Appeal Tribunal reversed Garrison's earlier decision denying benefits, finding that the Hospital's evidence of misconduct was insufficient. Griffin received unemployment benefits retroactively covering the period that the underlying benefit denial was in effect, and going forward, beginning with the week ending on June 6, 2009.

While his administrative appeal was still pending, Griffin filed this action in federal court. Griffin was directed to file

an amended complaint including, as attachments, Garrison's
decision and the ruling on Griffin's administrative appeal of
that decision. <u>See</u> Order (doc. no. 5) (directing Griffin to file
amended complaint). Griffin complied with the Order in pertinent
part, and I construe the written exhibits attached to the Amended
Complaint to be part of the Amended Complaint for all purposes.
<u>See</u> Fed. R. Civ. P. 10(c).

In September 2009, after Griffin had filed his federal court
action and also had initiated a claim before the Equal Employment
Opportunity Commission, R. Matthew Cairns, an attorney associated
with the law firm of Gallagher, Callahan & Gartrell, P.C., sent a
letter to certain Hospital employees, on behalf of his clients,
the Hospital and its insurer. The letter indicates that Griffin
had identified them by name as witnesses and informs them that
Cairns planned to meet with them. The letter includes the
following statement:

> [W]e have advised the Plymouth Police Department, Hospital
> Security and the US Marshall's office of Mr. Griffin's
> complaints and legal filings. While we have no present
> reason to believe that there is imminent danger to anyone,
> we did so out of an abundance of caution to help ensure the
> safety of Speare and its employees.

Construing the Amended Complaint (doc. no. 6) liberally, I

find that it includes the following claims[1]:

      1.   The Hospital Defendants fired Griffin in retaliation for his exercise of his right to free speech, in violation of the First Amendment.

      2.   The Hospital Defendants violated Griffin's right to equal protection under the Fifth and Fourteenth Amendments for terminating him because of a bias against him personally, a bias against his political affiliation, and a bias against his gender.

      3.   NH DES is liable under 42 U.S.C. § 1983 for violating Griffin's right to free speech under the First Amendment, because Margaret Garrison, an NH DES certifying officer, concluded that a pattern of behavior constituting "misconduct," for purposes of determining unemployment benefit eligibility, could include an inappropriate conversation about politics and guns made to a patient.

      4.   Garrison is liable under 42 U.S.C. § 1983 for violating Griffin's right to free speech under the First Amendment for her July 2009 decision denying that Griffin was eligible for unemployment benefits.

      5.   The Hospital and its attorneys, R. Matthew Cairns and Gallagher, Callahan & Gartrell, P.C., have libeled or defamed Griffin, in that (1) Cairns, representing third parties, made allegedly defamatory statements against Griffin in court in an unrelated case; and (2) Cairns, representing the Hospital, sent a letter to certain Hospital employees implying that Griffin presented a risk of harm to them.

---

      [1]If this Report and Recommendation is approved, the claims identified herein will be considered for all purposes to be the claims raised in the Amended Complaint (doc. no. 6).  If Griffin disagrees with this identification of the claims, he must do so by objection filed within 10 days of receipt of this Report and Recommendation, or he must properly move to amend the complaint.

Discussion

I.  Claims 1 and 2:  Hospital Defendants

Griffin's constitutional claims against the Hospital
defendants allege violations of his rights under the First,
Fifth, and Fourteenth Amendments.  By their own express terms,
however, these provisions impose limitations on the conduct of
federal agents and state actors, not private citizens.  See U.S.
Const. Am. I, V, & XIV; see also, e.g., Blum v. Yaretsky, 457
U.S. 991, 1002 (1982) (Fourteenth Amendment "'erects no shield
against merely private conduct, however discriminatory or
wrongful'" (citation omitted)).

Griffin contends that the Hospital, a private employer, is a
quasi-governmental entity, subject to the limitations on
governmental conduct set forth in the Bill of Rights.
Specifically, Griffin asserts that the Hospital has been
designated as a "critical access hospital" for purposes of the
Medicare program, see 42 U.S.C. § 1395i-4(c) & (e), and that it
is affiliated with, subsidized by, or regulated by the federal
government.  Amended Complaint (doc. no. 6) at 1.

In Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir.
1994), the First Circuit rejected the analogous claim that a
private hospital was a state actor for the purposes of finding

8

liability under 42 U.S.C. § 1983 because it received federal funds and was regulated by the state.  In pertinent part, the court found that "government regulation, even extensive regulation, and the receipt of federal funds, such as Medicare, Medicaid and Hill-Burton funds, are insufficient to establish that a [private] hospital or other entity acted under color of state law."  Id. (citing, inter alia, Mendez v. Belton, 739 F.2d 15, 18 (1st Cir. 1984)); see also Blum, 457 U.S. at 1004-12 (nursing home subject to extensive state regulation was not state actor).  Griffin has failed to provide any further nonconclusory allegations to support his claim that the Hospital is a governmental entity subject to the limitations set forth in the First, Fifth, and Fourteenth Amendments.  Accordingly, I recommend dismissal of Griffin's constitutional claims against the Hospital and defendants Bolognani, Nestor, and Kritkos.  See Rockwell, 26 F.3d at 260-61 (dismissing complaint asserting claims under section 1983 against private hospital and private physicians).

II.  Claims 3 and 4:  NH DES and Garrison

    A.    Mootness

    Griffin's First Amendment claims relating to NH DES and Garrison assert that the agency, acting through Garrison,

9

violated his rights under the First Amendment by deeming remarks

about politics and weapons to be "misconduct," making him

ineligible for unemployment benefits upon the date of his

termination under RSA § 282-A:32, I(b).[2]  See generally In re

Lakeview Neurorehab. Ctr., 150 N.H. 205, 209-11, 834 A.2d 374,

377-79 (2003) (legal standard for assessing "misconduct" for

unemployment benefits disqualification).  This claim is asserted

under 42 U.S.C. § 1983, which provides a cause of action for

deprivations of federal constitutional and statutory rights by

persons acting under color of state law.[3]

---

[2]The statute regarding disqualification for unemployment
benefits provides as follows:

> **Disqualification for Benefits**. . . .  An individual shall be
> disqualified for benefits:
>
> I.  Until the individual has earned in each of 5 weeks wages
> in employment . . . of at least 20 percent more than such
> individual's weekly benefit amount in effect when the act
> occurs, subsequent to the date:
> . . .
> (b) He was discharged for misconduct connected with his
> work, if so found by the commissioner;
> . . . .

RSA § 282-A:32, I(b).

[3]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,

The first question concerns the impact of the August 14,
2009 NH DES Appeal Tribunal decision on the viability of the
First Amendment claims and Griffin's motion for unemployment
benefits (doc. no. 3).  The Appeal Tribunal concluded that
Griffin was discharged for reasons other than misconduct
connected with work, reversed Garrison's July 2009 decision, and
directed that Griffin be paid unemployment benefits beginning
with the week ending June 6, 2009.

"When a case is moot -- that is, when the issues presented
are no longer live or when the parties lack a legally cognizable
interest in the outcome -- a case or controversy ceases to exist,
and dismissal of the action is compulsory." <u>Cruz v. Farquharson</u>,
252 F.3d 530, 533 (1st Cir. 2001).  The Appeal Tribunal ruling in
Griffin's favor affected the quantum of his damages and mooted
his related motion (doc. no. 3) seeking an order directing NH DES
to release unemployment benefits, but did not directly affect the
justiciability of his underlying First Amendment claims as to
Garrison's decision.  "Claims for damages or other monetary

---

> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law . . . .

relief automatically avoid mootness, so long as the claim remains viable." 13C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 3533.3 (3d ed. 2008). Even a "live claim for nominal damages will prevent dismissal for mootness." Bernhardt v. County of L.A., 279 F.3d 862, 872 (9th Cir. 2002). Here, Griffin has asserted claims for compensatory damages, above and beyond the value of his now moot request for unemployment benefits. Accordingly, without passing on whether and to what extent Griffin may be able to prove any substantial damages relating to Garrison's decision, I conclude that the First Amendment claims are not moot. See Parella v. Ret. Bd. of R.I. Employees' Ret. Sys., 173 F.3d 46, 57 (1st Cir. 1999) (plaintiffs' unsatisfied claim for accrued interest on their previously withheld retirement benefits kept their claim relating to withheld benefits justiciable, even after board no longer withheld any benefits).

    B.   <u>Eleventh Amendment Immunity</u>

    The next issue is whether a First Amendment claim may be maintained against either NH DES or Garrison, given the state's immunity under the Eleventh Amendment. "[I]t is well settled that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983

12

action." Fantini v. Salem State Coll., 557 F.3d 22, 33 (1st Cir.

2009) (citation and internal quotation marks omitted).  The

Eleventh Amendment bars retrospective claims for damages under

section 1983 against unconsenting states, state agencies, or

state officers acting in their official capacities.  See P.R.

Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144

(1993) (absent waiver, neither state nor agencies under its

control may be subject to suit in federal court); Will v. Mich.

Dep't of State Police, 491 U.S. 58, 66 (1989) (Congress did not

abrogate state's Eleventh Amendment immunity under section 1983,

citing Quern v. Jordan, 440 U.S. 332 (1979)).  New Hampshire has

not waived its sovereign immunity for damage claims asserted

under 42 U.S.C. § 1983.  Accordingly, the NH DES should be

dismissed as a defendant, and no official capacity claim against

Garrison may be asserted in this case.

Whether Garrison may be sued for damages under section 1983

in her individual capacity is a separate issue.  I have liberally

construed the Amended Complaint as asserting such a claim (Claim

4).  See Castro, 540 U.S. at 381 (courts may construe pro se

pleadings to avoid inappropriately stringent rules and

unnecessary dismissals).  Because the Eleventh Amendment does not

preclude claims against state officers in their individual

13

capacities, Griffin may maintain Claim 4 against Garrison in her

individual capacity.[4]

C.   Facial Validity of First Amendment Claim

The final issue is whether the facts alleged, construed

liberally in a light most favorable to Griffin, state a plausible

claim that Garrison violated Griffin's First Amendment rights,

sufficient for the purposes of preliminary review.  I construe

the allegations liberally, in light of state law procedures for

processing unemployment claims, as asserting that Garrison

received information from the Hospital indicating that it had

terminated Griffin for engaging in an inappropriate conversation

about politics and weapons.  See RSA § 282-A:45(I) (procedures

for obtaining employer's response to unemployment benefits

---

[4]In Bettencourt v. Bd. of Reg. in Med., 904 F.2d 772 (1st
Cir. 1990), the First Circuit set forth a three-part test for
determining if administrative decisionmakers, like judges, may
assert absolute immunity as to claims challenging their
decisions.  One part of the test is whether the officer
adjudicates against a "backdrop of multiple safeguards designed
to protect a [claimant's] constitutional rights." Id. at 783.  I
refrain from deciding whether Garrison would be entitled to
assert quasi-judicial immunity in this case, due to the
incomplete record regarding the procedural protections available
to claimants in Griffin's circumstances.  Cf. Calderon v. Conn.,
2007 U.S. Dist. LEXIS 78570, at *10 (D. Conn. Oct. 24, 2007)
(finding that procedures in Connecticut for processing and
reviewing unemployment benefit claims "share enough of the
characteristics of the judicial process to be entitled to
absolute quasi-judicial immunity").

claim).  Garrison found that Griffin had been fired for

"misconduct," resulting in his ineligibility for unemployment

benefits under state law.  See In re Lakeview, 150 N.H. at 208–

09; 834 A.2d at 377 (standard for finding misconduct).

Griffin's claim resembles those arising under the Free

Exercise Clause of the First Amendment, involving employees

terminated for religious practices conflicting with a private

employer's policy but not otherwise barred by law, who have

successfully challenged administrative rulings or state laws

denying them unemployment benefits.  See, e.g., Hobbie v. Unemp.

App. Com'n, 480 U.S. 136, 140–41 (1987) (denying unemployment

benefits to Seventh-Day Adventist who was fired because she was

unwilling to work on Saturdays impermissibly burdens free

exercise of religion); cf. Employment Div. v. Smith, 494 U.S.

872, 890 (1990) (denying unemployment benefits to employees fired

for their criminal misconduct in using peyote did not violate

Free Exercise clause because state law criminalizing use of

peyote passed constitutional muster).  The Court has

characterized these cases as standing for the proposition that

"where the State has in place a system of individual exemptions,

it may not refuse to extend that system to cases of 'religious

hardship' without compelling reason."  Employment Div., 494 U.S.

15

at 884 (citation omitted).  Lower courts have extended this line of authority to cover claims like Griffin's asserting that the state violated the First Amendment when it determined that an employee fired for engaging in political speech at work was ineligible for unemployment benefits.  See, e.g., De Grego v. Levine, 362 N.Y.S.2d 207, 208-09 (N.Y. App. Div. 1974) (First Amendment barred State from denying unemployment benefits to employee fired for wearing "Impeachment with Honor" button), aff'd on other grounds, 347 N.E.2d 611 (N.Y. 1976).

Griffin's First Amendment claim as to Garrison may also be analogized with a retaliation claim, asserted by a public employee challenging his or her termination on First Amendment grounds, see, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).  Construing the pleadings and attached exhibits in a light most favorable to Griffin, I conclude that Griffin has alleged facts sufficient to state a First Amendment claim against Garrison in her individual capacity.  Accordingly, I will direct service of this claim as to Garrison in the Order issued this date.

IV.  Defamation Claim (Claim 5)

Griffin contends that the Hospital and its attorneys, R. Matthew Cairns and Gallagher, Callahan & Gartrell, P.C., defamed

16

him in two respects.  First, Cairns, in representing third

parties in an unrelated case, allegedly defamed Griffin in court

when he argued that his clients were concerned that Griffin had

investigated their backgrounds.  See Ex. B to Am. Compl. (doc.

no. 6) (Griffin v. Town of Whitefield, No. 07-CV-243-SM (Nov. 26,

2007) (Tr. of Prelim. Pretrial Conf. before Muirhead, Mag. J.)).

Second, Cairns, his law firm, and the Hospital allegedly libeled

Griffin when Cairns sent a letter to certain Hospital employees

informing them that Griffin had identified them by name as

witnesses, and that the police, Hospital security, and the U.S.

Marshall's office had been notified "out of an abundance of

caution to help ensure the safety of Speare and its employees."

In any civil action of which the district court has original

jurisdiction, the court also has jurisdiction over all other

claims that are so related to the claims in the action within the

original jurisdiction that they form part of the same case or

controversy.  See 28 U.S.C. § 1367(a).  The decision whether to

exercise supplemental jurisdiction is left to the broad

discretion of the district court, taking into account such

factors as judicial economy, convenience, fairness to litigants,

and comity.  See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir.

1991).

17

Here, these interests militate against an exercise of
supplemental jurisdiction over Claim 5.  If the Report and
Recommendation is accepted, the federal claims against the
Hospital defendants (Claims 1 and 2) will be dismissed; neither
the Hospital nor any of its employees will remain as parties to
any federal claim in this lawsuit.  Litigating the section 1983
claim in this court and the defamation claim in State court will
not involve any substantial duplication of testimony or evidence
in the separate forums, as issues pertinent to the defamation
claim are not relevant to Garrison's liability, and vice versa.
Fairness to the litigants and the interests of judicial economy
therefore do not militate in favor of exercising supplemental
jurisdiction, as the parties and claims do not substantially
overlap.  Because I conclude that the claims are not sufficiently
related to one another to make trying the case in one forum
appropriate in light of all pertinent factors, I recommend that
the Court dismiss Claim 5, without prejudice to Griffin's ability
to file a defamation claim in State court.  See Serrano-Moran v.
Grau-Gaztambide, 195 F.3d 68, 69-70 (1st Cir. 1999) (district
court did not abuse discretion in declining to exercise
jurisdiction over medical malpractice claims in section 1983 case
asserting that police misconduct, as well as medical malpractice

18

of hospital and doctors, caused plaintiffs' son's death).

Conclusion

For the foregoing reasons, the only claim that should remain in this lawsuit, if this Report and Recommendation is accepted, is the First Amendment claim (Claim 4) asserted under section 1983 against Garrison in her individual capacity. In an Order issued this date, I have directed service of Claim 4 accordingly.

I recommend dismissal of all federal claims against the Hospital, Nestor, Bolognani, and Kritkos (Claims 1 and 2). The claim against NH DES (Claim 3) should be dismissed under the Eleventh Amendment. The defamation claim as to the Hospital and its attorneys (Claim 5) should be dismissed without prejudice to Griffin's ability to file a defamation claim in State court.

Because Griffin has already obtained a favorable ruling on his unemployment benefits claim, his motion for such benefits (doc. no. 3) should be denied. In addition, the request for punitive damages appended to his Amended Complaint (doc. no. 6) as to Nestor, Bolognani, and Kritkos, should be deemed moot, if this Report and Recommendation is accepted.

Any objections to this report and recommendation must be filed within 10 days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal

the district court's order.  See <u>Unauthorized Practice of Law</u>

<u>Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United</u>

<u>States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge


Date: November 16, 2009

cc:   John R. Griffin, Jr., pro se

JRM:nmd