**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>John R. Griffin, Jr.</u>

  v.          Civil No. 09-cv-00250-SM

<u>New Hampshire Department of
Employment Security et al.</u>

**REPORT AND RECOMMENDATION**

  Before the court is the Amended Complaint (doc. no. 6) filed by John R. Griffin, Jr., alleging that defendant Speare Memorial Hospital ("Hospital"), acting through its agents, Linda Nestor, Laurie Bolognani, and Peter Kritkos ("Hospital defendants"), improperly fired him in violation of his federal constitutional rights, and that the New Hampshire Department of Employment Security ("NH DES"), through its Certifying Officer, Margaret Garrison, violated his First Amendment right to free speech in determining that a statement about politics made to a patient could be considered "misconduct" for the purposes of denying eligibility for unemployment compensation. In addition, Griffin claims that the Hospital and its attorneys, defendants R. Matthew Cairns and Gallagher, Callahan & Gartrell, P.C., have defamed him. The matter is before me for preliminary review to determine, among other things, whether the Amended Complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915(e)(2)(B); United States District Court District of

New Hampshire Local Rule ("LR") 4.3(d)(1) (authorizing magistrate judge to conduct a preliminary review of cases filed pro se).

Also pending is Griffin's motion for an order directing the release of unemployment benefits (doc. no. 3). For reasons set forth below, this motion should be denied as moot. In addition, accepting this Report and Recommendation will also render moot Griffin's request to add a punitive damages claim against the Hospital defendants, as set forth more fully below.

## Standard of Review

Under this Court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review. LR 4.3(d)(1). In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly [pleaded]." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375,

381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals). This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint should be dismissed for failing to state a claim on which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'" Id. (citation omitted). Determining if a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted).

Background

    For six years prior to May 19, 2009, Griffin worked for the Hospital as a radiology technician.  Prior to May 19, Griffin had a conversation with a patient in which he recounted a news story regarding the number of firearms purchases that had occurred in the first quarter of 2009.  The patient complained about the conversation, and Linda Nestor, Director of the Radiology Department, contacted the patient on May 19 to investigate.  The patient said that Griffin had made remarks about President Obama and had reported that he was stocking up on food and weapons.  Nestor did not ask Griffin to provide his side of the story, concluding that she did not need to investigate further because Griffin had made inappropriate comments in the past.

    On May 19, 2009, Nestor and the Hospital's Human Resource Director, Laurie Bolognani, fired Griffin.  Peter Kritkos, the Hospital's Chief Financial Officer, sent Griffin a termination letter.  Griffin received notice that he was fired for making inappropriate remarks to a patient about guns and politics.

    Griffin has alleged that the Hospital treated him differently than female employees.  The Hospital did not fire a female nurse who picked fights with patients and used caustic, demeaning language with them; did not fire a female nurse who

stole barbiturates; and did not fire a nurse who came to work under the influence of alcohol.

After he was fired, Griffin filed a claim for unemployment benefits.  Griffin's claim was denied on July 15, 2009, by Margaret Garrison, an NH DES certifying officer.  From the facts alleged, I conclude that Garrison received information from the Hospital detailing that Griffin had been fired for misconduct, including an inappropriate conversation with a patient about guns and politics.  Because Garrison found that Griffin was terminated for misconduct, she concluded that he was ineligible to receive unemployment compensation upon the date of his termination pursuant to N.H. Rev. Stat. Ann. ("RSA") § 282-A:32, I(b).

Griffin filed an administrative appeal of the benefit denial.  In August 2009, following an evidentiary hearing, the NH DES Appeal Tribunal reversed Garrison's earlier decision denying benefits, finding that the Hospital's evidence of misconduct was insufficient.  Griffin received unemployment benefits retroactively covering the period that the underlying benefit denial was in effect, and going forward, beginning with the week ending on June 6, 2009.

While his administrative appeal was still pending, Griffin filed this action in federal court.  Griffin was directed to file

an amended complaint including, as attachments, Garrison's decision and the ruling on Griffin's administrative appeal of that decision. See Order (doc. no. 5) (directing Griffin to file amended complaint). Griffin complied with the Order in pertinent part, and I construe the written exhibits attached to the Amended Complaint to be part of the Amended Complaint for all purposes. See Fed. R. Civ. P. 10(c).

In September 2009, after Griffin had filed his federal court action and also had initiated a claim before the Equal Employment Opportunity Commission, R. Matthew Cairns, an attorney associated with the law firm of Gallagher, Callahan & Gartrell, P.C., sent a letter to certain Hospital employees, on behalf of his clients, the Hospital and its insurer. The letter indicates that Griffin had identified them by name as witnesses and informs them that Cairns planned to meet with them. The letter includes the following statement:

> [W]e have advised the Plymouth Police Department, Hospital Security and the US Marshall's office of Mr. Griffin's complaints and legal filings. While we have no present reason to believe that there is imminent danger to anyone, we did so out of an abundance of caution to help ensure the safety of Speare and its employees.

Construing the Amended Complaint (doc. no. 6) liberally, I

find that it includes the following claims[1]:

1.   The Hospital Defendants fired Griffin in retaliation for his exercise of his right to free speech, in violation of the First Amendment.

2.   The Hospital Defendants violated Griffin's right to equal protection under the Fifth and Fourteenth Amendments for terminating him because of a bias against him personally, a bias against his political affiliation, and a bias against his gender.

3.   NH DES is liable under 42 U.S.C. § 1983 for violating Griffin's right to free speech under the First Amendment, because Margaret Garrison, an NH DES certifying officer, concluded that a pattern of behavior constituting "misconduct," for purposes of determining unemployment benefit eligibility, could include an inappropriate conversation about politics and guns made to a patient.

4.   Garrison is liable under 42 U.S.C. § 1983 for violating Griffin's right to free speech under the First Amendment for her July 2009 decision denying that Griffin was eligible for unemployment benefits.

5.   The Hospital and its attorneys, R. Matthew Cairns and Gallagher, Callahan & Gartrell, P.C., have libeled or defamed Griffin, in that (1) Cairns, representing third parties, made allegedly defamatory statements against Griffin in court in an unrelated case; and (2) Cairns, representing the Hospital, sent a letter to certain Hospital employees implying that Griffin presented a risk of harm to them.

---

[1]If this Report and Recommendation is approved, the claims identified herein will be considered for all purposes to be the claims raised in the Amended Complaint (doc. no. 6).  If Griffin disagrees with this identification of the claims, he must do so by objection filed within 10 days of receipt of this Report and Recommendation, or he must properly move to amend the complaint.

<u>Discussion</u>

I.  <u>Claims 1 and 2:  Hospital Defendants</u>

Griffin's constitutional claims against the Hospital defendants allege violations of his rights under the First, Fifth, and Fourteenth Amendments.  By their own express terms, however, these provisions impose limitations on the conduct of federal agents and state actors, not private citizens.  <u>See</u> U.S. Const. Am. I, V, & XIV; <u>see also, e.g.</u>, <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1002 (1982) (Fourteenth Amendment "'erects no shield against merely private conduct, however discriminatory or wrongful'" (citation omitted)).

Griffin contends that the Hospital, a private employer, is a quasi-governmental entity, subject to the limitations on governmental conduct set forth in the Bill of Rights. Specifically, Griffin asserts that the Hospital has been designated as a "critical access hospital" for purposes of the Medicare program, <u>see</u> 42 U.S.C. § 1395i-4(c) & (e), and that it is affiliated with, subsidized by, or regulated by the federal government.  Amended Complaint (doc. no. 6) at 1.

In <u>Rockwell v. Cape Cod Hosp.</u>, 26 F.3d 254, 258 (1st Cir. 1994), the First Circuit rejected the analogous claim that a private hospital was a state actor for the purposes of finding

liability under 42 U.S.C. § 1983 because it received federal funds and was regulated by the state. In pertinent part, the court found that "government regulation, even extensive regulation, and the receipt of federal funds, such as Medicare, Medicaid and Hill-Burton funds, are insufficient to establish that a [private] hospital or other entity acted under color of state law." Id. (citing, inter alia, Mendez v. Belton, 739 F.2d 15, 18 (1st Cir. 1984)); see also Blum, 457 U.S. at 1004-12 (nursing home subject to extensive state regulation was not state actor). Griffin has failed to provide any further nonconclusory allegations to support his claim that the Hospital is a governmental entity subject to the limitations set forth in the First, Fifth, and Fourteenth Amendments. Accordingly, I recommend dismissal of Griffin's constitutional claims against the Hospital and defendants Bolognani, Nestor, and Kritkos. See Rockwell, 26 F.3d at 260-61 (dismissing complaint asserting claims under section 1983 against private hospital and private physicians).

II. Claims 3 and 4: NH DES and Garrison

   A. Mootness

Griffin's First Amendment claims relating to NH DES and Garrison assert that the agency, acting through Garrison,

violated his rights under the First Amendment by deeming remarks about politics and weapons to be "misconduct," making him ineligible for unemployment benefits upon the date of his termination under RSA § 282-A:32, I(b).[2]  See generally In re Lakeview Neurorehab. Ctr., 150 N.H. 205, 209-11, 834 A.2d 374, 377-79 (2003) (legal standard for assessing "misconduct" for unemployment benefits disqualification).  This claim is asserted under 42 U.S.C. § 1983, which provides a cause of action for deprivations of federal constitutional and statutory rights by persons acting under color of state law.[3]

---

[2]The statute regarding disqualification for unemployment benefits provides as follows:

> **Disqualification for Benefits.** . . .  An individual shall be disqualified for benefits:
>
> I.  Until the individual has earned in each of 5 weeks wages in employment . . . of at least 20 percent more than such individual's weekly benefit amount in effect when the act occurs, subsequent to the date:
>           . . .
> (b) He was discharged for misconduct connected with his work, if so found by the commissioner;
>           . . . .

RSA § 282-A:32, I(b).

[3]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

The first question concerns the impact of the August 14, 2009 NH DES Appeal Tribunal decision on the viability of the First Amendment claims and Griffin's motion for unemployment benefits (doc. no. 3). The Appeal Tribunal concluded that Griffin was discharged for reasons other than misconduct connected with work, reversed Garrison's July 2009 decision, and directed that Griffin be paid unemployment benefits beginning with the week ending June 6, 2009.

"When a case is moot -- that is, when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome -- a case or controversy ceases to exist, and dismissal of the action is compulsory." Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001). The Appeal Tribunal ruling in Griffin's favor affected the quantum of his damages and mooted his related motion (doc. no. 3) seeking an order directing NH DES to release unemployment benefits, but did not directly affect the justiciability of his underlying First Amendment claims as to Garrison's decision. "Claims for damages or other monetary

---

> subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

relief automatically avoid mootness, so long as the claim remains viable." 13C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 3533.3 (3d ed. 2008). Even a "live claim for nominal damages will prevent dismissal for mootness." Bernhardt v. County of L.A., 279 F.3d 862, 872 (9th Cir. 2002). Here, Griffin has asserted claims for compensatory damages, above and beyond the value of his now moot request for unemployment benefits. Accordingly, without passing on whether and to what extent Griffin may be able to prove any substantial damages relating to Garrison's decision, I conclude that the First Amendment claims are not moot. See Parella v. Ret. Bd. of R.I. Employees' Ret. Sys., 173 F.3d 46, 57 (1st Cir. 1999) (plaintiffs' unsatisfied claim for accrued interest on their previously withheld retirement benefits kept their claim relating to withheld benefits justiciable, even after board no longer withheld any benefits).

 B. Eleventh Amendment Immunity

 The next issue is whether a First Amendment claim may be maintained against either NH DES or Garrison, given the state's immunity under the Eleventh Amendment. "[I]t is well settled that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983

action." Fantini v. Salem State Coll., 557 F.3d 22, 33 (1st Cir. 2009) (citation and internal quotation marks omitted). The Eleventh Amendment bars retrospective claims for damages under section 1983 against unconsenting states, state agencies, or state officers acting in their official capacities. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither state nor agencies under its control may be subject to suit in federal court); Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (Congress did not abrogate state's Eleventh Amendment immunity under section 1983, citing Quern v. Jordan, 440 U.S. 332 (1979)). New Hampshire has not waived its sovereign immunity for damage claims asserted under 42 U.S.C. § 1983. Accordingly, the NH DES should be dismissed as a defendant, and no official capacity claim against Garrison may be asserted in this case.

Whether Garrison may be sued for damages under section 1983 in her individual capacity is a separate issue. I have liberally construed the Amended Complaint as asserting such a claim (Claim 4). See Castro, 540 U.S. at 381 (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals). Because the Eleventh Amendment does not preclude claims against state officers in their individual

capacities, Griffin may maintain Claim 4 against Garrison in her individual capacity.[4]

C. Facial Validity of First Amendment Claim

The final issue is whether the facts alleged, construed liberally in a light most favorable to Griffin, state a plausible claim that Garrison violated Griffin's First Amendment rights, sufficient for the purposes of preliminary review. I construe the allegations liberally, in light of state law procedures for processing unemployment claims, as asserting that Garrison received information from the Hospital indicating that it had terminated Griffin for engaging in an inappropriate conversation about politics and weapons. See RSA § 282-A:45(I) (procedures for obtaining employer's response to unemployment benefits

---

[4] In Bettencourt v. Bd. of Reg. in Med., 904 F.2d 772 (1st Cir. 1990), the First Circuit set forth a three-part test for determining if administrative decisionmakers, like judges, may assert absolute immunity as to claims challenging their decisions. One part of the test is whether the officer adjudicates against a "backdrop of multiple safeguards designed to protect a [claimant's] constitutional rights." Id. at 783. I refrain from deciding whether Garrison would be entitled to assert quasi-judicial immunity in this case, due to the incomplete record regarding the procedural protections available to claimants in Griffin's circumstances. Cf. Calderon v. Conn., 2007 U.S. Dist. LEXIS 78570, at *10 (D. Conn. Oct. 24, 2007) (finding that procedures in Connecticut for processing and reviewing unemployment benefit claims "share enough of the characteristics of the judicial process to be entitled to absolute quasi-judicial immunity").

claim). Garrison found that Griffin had been fired for "misconduct," resulting in his ineligibility for unemployment benefits under state law. See In re Lakeview, 150 N.H. at 208–09; 834 A.2d at 377 (standard for finding misconduct).

Griffin's claim resembles those arising under the Free Exercise Clause of the First Amendment, involving employees terminated for religious practices conflicting with a private employer's policy but not otherwise barred by law, who have successfully challenged administrative rulings or state laws denying them unemployment benefits. See, e.g., Hobbie v. Unemp. App. Com'n, 480 U.S. 136, 140–41 (1987) (denying unemployment benefits to Seventh-Day Adventist who was fired because she was unwilling to work on Saturdays impermissibly burdens free exercise of religion); cf. Employment Div. v. Smith, 494 U.S. 872, 890 (1990) (denying unemployment benefits to employees fired for their criminal misconduct in using peyote did not violate Free Exercise clause because state law criminalizing use of peyote passed constitutional muster). The Court has characterized these cases as standing for the proposition that "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." Employment Div., 494 U.S.

at 884 (citation omitted).  Lower courts have extended this line of authority to cover claims like Griffin's asserting that the state violated the First Amendment when it determined that an employee fired for engaging in political speech at work was ineligible for unemployment benefits.  See, e.g., De Grego v. Levine, 362 N.Y.S.2d 207, 208-09 (N.Y. App. Div. 1974) (First Amendment barred State from denying unemployment benefits to employee fired for wearing "Impeachment with Honor" button), aff'd on other grounds, 347 N.E.2d 611 (N.Y. 1976).

Griffin's First Amendment claim as to Garrison may also be analogized with a retaliation claim, asserted by a public employee challenging his or her termination on First Amendment grounds, see, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).  Construing the pleadings and attached exhibits in a light most favorable to Griffin, I conclude that Griffin has alleged facts sufficient to state a First Amendment claim against Garrison in her individual capacity.  Accordingly, I will direct service of this claim as to Garrison in the Order issued this date.

IV.  Defamation Claim (Claim 5)

Griffin contends that the Hospital and its attorneys, R. Matthew Cairns and Gallagher, Callahan & Gartrell, P.C., defamed

him in two respects. First, Cairns, in representing third parties in an unrelated case, allegedly defamed Griffin in court when he argued that his clients were concerned that Griffin had investigated their backgrounds. See Ex. B to Am. Compl. (doc. no. 6) (Griffin v. Town of Whitefield, No. 07-CV-243-SM (Nov. 26, 2007) (Tr. of Prelim. Pretrial Conf. before Muirhead, Mag. J.)). Second, Cairns, his law firm, and the Hospital allegedly libeled Griffin when Cairns sent a letter to certain Hospital employees informing them that Griffin had identified them by name as witnesses, and that the police, Hospital security, and the U.S. Marshall's office had been notified "out of an abundance of caution to help ensure the safety of Speare and its employees."

In any civil action of which the district court has original jurisdiction, the court also has jurisdiction over all other claims that are so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy. See 28 U.S.C. § 1367(a). The decision whether to exercise supplemental jurisdiction is left to the broad discretion of the district court, taking into account such factors as judicial economy, convenience, fairness to litigants, and comity. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991).

Here, these interests militate against an exercise of supplemental jurisdiction over Claim 5. If the Report and Recommendation is accepted, the federal claims against the Hospital defendants (Claims 1 and 2) will be dismissed; neither the Hospital nor any of its employees will remain as parties to any federal claim in this lawsuit. Litigating the section 1983 claim in this court and the defamation claim in State court will not involve any substantial duplication of testimony or evidence in the separate forums, as issues pertinent to the defamation claim are not relevant to Garrison's liability, and vice versa. Fairness to the litigants and the interests of judicial economy therefore do not militate in favor of exercising supplemental jurisdiction, as the parties and claims do not substantially overlap. Because I conclude that the claims are not sufficiently related to one another to make trying the case in one forum appropriate in light of all pertinent factors, I recommend that the Court dismiss Claim 5, without prejudice to Griffin's ability to file a defamation claim in State court. See Serrano-Moran v. Grau-Gaztambide, 195 F.3d 68, 69-70 (1st Cir. 1999) (district court did not abuse discretion in declining to exercise jurisdiction over medical malpractice claims in section 1983 case asserting that police misconduct, as well as medical malpractice

of hospital and doctors, caused plaintiffs' son's death).

## Conclusion

For the foregoing reasons, the only claim that should remain in this lawsuit, if this Report and Recommendation is accepted, is the First Amendment claim (Claim 4) asserted under section 1983 against Garrison in her individual capacity.  In an Order issued this date, I have directed service of Claim 4 accordingly.

I recommend dismissal of all federal claims against the Hospital, Nestor, Bolognani, and Kritkos (Claims 1 and 2).  The claim against NH DES (Claim 3) should be dismissed under the Eleventh Amendment.  The defamation claim as to the Hospital and its attorneys (Claim 5) should be dismissed without prejudice to Griffin's ability to file a defamation claim in State court.

Because Griffin has already obtained a favorable ruling on his unemployment benefits claim, his motion for such benefits (doc. no. 3) should be denied.  In addition, the request for punitive damages appended to his Amended Complaint (doc. no. 6) as to Nestor, Bolognani, and Kritkos, should be deemed moot, if this Report and Recommendation is accepted.

Any objections to this report and recommendation must be filed within 10 days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal

the district court's order.  See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: November 16, 2009

cc:   John R. Griffin, Jr., pro se

JRM:nmd