UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

John R. Griffin, Jr.,
       Plaintiff

       v.                                    Case No. 09-cv-250-SM
                                             Opinion No. 2011 DNH 008
Margaret Garrison,
       Defendant

**O R D E R**

Pro se plaintiff, John R. Griffin, Jr., brings this action seeking compensatory and punitive damages, claiming defendant, an employee of the New Hampshire Department of Employment Security, violated his First Amendment right to free speech.  More specifically, Griffin claims a constitutionally protected right to receive state unemployment benefits - even if his private-sector employment was terminated "for cause" - when that termination was due to his having engaged in arguably "political" speech.  Pending before the court are plaintiff's motion for summary judgment (document no. 44) and defendant's cross-motion for summary judgment (document no. 47).  For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

**Standard of Review**

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Background**

Plaintiff was employed at Speare Memorial Hospital as a radiology technician from May 30, 2003, until May 19, 2009, when the hospital terminated his employment. He applied to the New Hampshire Department of Employment Security ("DES") for unemployment benefits. Under New Hampshire law, however, a person is not eligible for unemployment benefits if his or her employment was terminated for "misconduct connected with his [or her] work." N.H. Rev. Stat. Ann. ("RSA") 282-A:32, I(b). See

also Appeal of Riendeau, 152 N.H. 396, 398 (2005) ("New Hampshire's unemployment compensation system is predicated upon benefits being paid to those who become unemployed through no fault of their own."). Accordingly, the DES sent the hospital a "Notice of Claim," seeking information about Griffin's separation from employment. In particular, the DES wanted to know the reason(s) for Griffin's discharge, details of any warnings that had been issued to him, and an explanation of the company policy (if any) that he had violated.

In response, the hospital informed DES that it fired Griffin because he had an "inappropriate" conversation with a patient about "politics and weapons," and the patient had complained. Plaintiff's motion for summary judgment, Exhibit 2 (document no. 44-3) at 2. The patient apparently reported that Griffin "made a remark about President Obama, Manchester being Obamaland, and that he was stocking up on food, artillery, bullets and ammo in case something happened." Plaintiff's Exhibit 5 (document no. 44-6) at 1. The "Notice of Corrective Action" prepared by the hospital and signed by Griffin reveals that he had been disciplined on six prior occasions, at least three of which involved "unprofessional conduct" or "unprofessional communication and workplace behavior." Plaintiff's Exhibit 1 (document no. 44-2). The narrative portion of that document was

completed by the director of the hospital's radiology department, Linda Nestor, and provides that:

> I was notified via another hospital department about an issue regarding a conversation between [Griffin] and a patient. In my follow up investigation with the patient regarding the concern, the patient was upset due to remarks made that were inappropriate and related to <u>politics and weapons</u>. [Griffin] has had <u>many verbal and written warnings in the past</u> related to inappropriate/unprofessional comments that he has made. He has received <u>two suspensions without pay</u> for this behavior. This is a <u>pattern of behavior</u> that has gone on for almost 6 years and will not be tolerated any longer. <u>As explicitly stated in his last written warning, the consequence of this action was termination of employment</u>. [Griffin] has not been able to maintain this performance behavior, and therefore is terminated from employment effective immediately.

<u>Id</u>. (emphasis supplied).

A DES employee who is not party to this suit conducted the investigation into the circumstances surrounding, and the cause for, Griffin's termination. Defendant, Margaret Garrison, then reviewed that material and concluded that Griffin had been "discharged on 5/19/09 from Speare Memorial Hospital Association for reasons rising to the level of misconduct." Plaintiff's Exhibit 3 (document no. 44-4) at 2. Accordingly, on July 15, 2009, she denied Griffin's application for unemployment benefits. Griffin appealed that denial to the New Hampshire Employment Security Appeal Tribunal, which concluded that the hospital failed to submit sufficient evidence to support a finding that

Griffin engaged in misconduct, reversed Garrison's decision, and awarded retroactive unemployment benefits beginning the first week in June, 2009. Plaintiff's Exhibit 5 (document no. 44-6) at 3. Subsequently, despite having received the sought-after unemployment benefits, Griffin filed this action.

## Discussion

Griffin believes the hospital terminated his employment as a consequence of his having engaged in protected "political speech" (i.e., his comments about "Obamaland" and stocking up on food, weapons, and ammunition). Plainly, he has no First Amendment claim against the hospital, since it was not acting under color of state law when it discharged him. See generally 42 U.S.C. § 1983. Accordingly, Griffin asserts a First Amendment claim against Ms. Garrison, claiming that her administrative conclusion that he was discharged for reasons rising to the level of "misconduct," and her concomitant denial of his application for benefits, effectively violated his First Amendment rights. Put differently, Griffin asserts that because he was discharged for having engaged in arguably protected political speech, he had a constitutional right to receive state unemployment benefits - a right he says Garrison violated. He seeks both compensatory and punitive damages from Garrison, in her individual capacity.

It is unlikely that Griffin's constitutional rights were violated when his application for unemployment benefits was initially denied. But, even if Garrison could be said to have violated Griffin's asserted right to unemployment benefits, she would plainly be entitled to qualified immunity from suit under § 1983.

I.  <u>Griffin's Constitutional Rights</u>.

In allowing Griffin to proceed with his claims, the magistrate judge (Muirhead, M.J.) noted that "Griffin's case resembles those arising under the Free Exercise Clause of the First Amendment, involving employees terminated for religious practices conflicting with a private employer's policy but not otherwise barred by law." Report and Recommendation (document no. 7) at 15. That analogy is weak, however, and the referenced line of Free Exercise Clause cases does not support Griffin's free speech claim.

Generally speaking, the Supreme Court opinions referenced by the magistrate judge stand for the proposition that:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, <u>thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs</u>, a burden upon religion exists. While the compulsion may be indirect,

> the infringement upon free exercise is nonetheless substantial.

Thomas v. Review Bd. of Indiana Employ't Sec. Div., 450 U.S. 707, 717-18 (1981) (emphasis supplied). See also Hobbie v. Unemployment Appeals Comm'n of Florida, 480 U.S. 136 (1987); Sherbert v. Verner, 374 U.S. 398 (1963). Here, however, nothing in the State's statutory scheme governing unemployment benefits conditioned receipt of those benefits upon conduct that would have put "substantial pressure" on Griffin to "violate his beliefs" about the President, the City of Manchester, or firearms. Thomas, 450 U.S. at 718. Nor was his continued employment at the hospital conditioned upon his forfeiting any right guaranteed by law. Nor was he discharged for having engaged in privileged or legally protected conduct mandated by his political beliefs.

In short, even accepting the magistrate judge's analogy for discussion purposes, Griffin was not forced to choose between adhering to his political beliefs (and, thereby, risk both discharge and ineligibility for unemployment benefits), or forsaking those political beliefs in order to obtain a public benefit generally available to others. Rather, Griffin remained absolutely free to maintain his political beliefs and he was free to discuss them whenever he pleased, as long as he did not do so

during work hours, with patients - workplace conduct about which his employer had warned him on several occasions.[1]

Accordingly, the court concludes that the Supreme Court's Free Exercise cases do not support Griffin's claim that defendant's initial denial of his application for benefits violated his First Amendment rights. And, if the reasoning employed in those cases does not apply, it is difficult to imagine how Ms. Garrison's initial denial of Griffin's application for benefits could have possibly violated his constitutionally protected right of free speech.

II. <u>Ms. Garrison is Entitled to Qualified Immunity</u>.

Even if her determination that Griffin was not eligible for unemployment benefits did violate Griffin's First Amendment

---

[1] One might conceivably argue that the State's statutory scheme had a "chilling effect" on Griffin's First Amendment rights. But, as a private-sector employee, Griffin had no constitutionally protected right of free speech in his workplace. <u>See, e.g.</u>, <u>Hudgens v. NLRB</u>, 424 U.S. 507, 513 (1976) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state. Thus, while statutory or common law may in some situations extend protection or provide redress against a private corporation or person who seeks to abridge the free expression of others, no such protection or redress is provided by the Constitution itself.") (citation omitted). Consequently, while the state statutory scheme may have indirectly counseled (or even pressured) Griffin not to engage in certain speech while at his private-sector job, he had no protected right to engage in such speech at his private workplace.

rights in some as yet undetermined way, Garrison is still entitled to qualified immunity. A government official is entitled to qualified immunity from personal liability if the challenged "'conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Aversa v. United States</u>, 99 F.3d 1200, 1214 (1st Cir. 1996) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). The challenged conduct is measured by an objective standard of reasonableness, that is: "Could an objectively reasonable official, situated similarly to the defendant, have believed that his conduct did not violate the plaintiff['s] constitutional rights, in light of clearly established law and the information possessed by the defendant at the time of the allegedly wrongful conduct?" <u>Wood v. Clemons</u>, 89 F.3d 922, 927 (1st Cir. 1996). As the Court of Appeals for the First Circuit has observed,

> To determine a defendant's eligibility for qualified immunity, courts must define the right asserted by the plaintiff at an appropriate level of generality and ask whether, so characterized, that right was clearly established when the harm-inducing conduct allegedly took place. This does not mean that a right is clearly established only if there is precedent of considerable factual similarity. It does mean, however, that the law must have <u>defined the right in a quite specific manner</u>, and that the announcement of the rule establishing the right must have been <u>unambiguous and widespread</u>, such that the unlawfulness of particular conduct will be apparent ex ante to reasonable public officials.

9

Brady v. Dill, 187 F.3d 104, 115-16 (1st Cir. 1999) (citations and internal quotation marks omitted) (emphasis supplied).  As suggested in Dill, a defendant does not lose the protection of qualified immunity if she acts mistakenly, as long as her mistake was objectively reasonable, as qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

Typically, to resolve a government official's claim of qualified immunity, the court must make two inquiries: first, whether the plaintiff has alleged a viable claim that his or her constitutional rights were actually violated; and, second, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  Under Saucier, that two-step inquiry was mandatory.  Id.  More recently, however, the Supreme Court has relaxed the requirement, holding that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 129 S.Ct. 808, 818 (2009).

In this case, the court has expressed its doubt that Griffin's First Amendment rights were violated by Garrison's initial denial of his application for unemployment benefits. But, even if the right asserted by Griffin exists and was violated, the general absence of federal precedent recognizing such a right in this context shows that such right was not "clearly established" in this circuit at the time of Garrison's challenged conduct. No court in this circuit (or, seemingly, in any other federal circuit) has suggested that a First Amendment right to receive state unemployment benefits exits even when the applicant has been discharged from private employment for cause as a result of having engaged in "political" speech during work hours, contrary to a private employer's established policies. See generally Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) ("[T]he salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that [her] particular conduct was unconstitutional.").[2]

---

[2] The court is aware that a few state courts have concluded that, under certain circumstances, an individual's First Amendment rights can be violated by the denial of unemployment benefits. See, e.g., Frigm v. Unemployment Compensation Bd. of Review, 642 A.2d 629, 633 (Pa. Commw. Ct. 1994); McCall v. Unemployment Compensation Bd. of Review, 717 A.2d 623, 625 (Pa. Commw. Ct. 1998); De Grego v. Levine, 362 N.Y.S.2d 207, 208-09 (N.Y. App. Div. 1974), aff'd on other grounds, 347 N.E.2d 611 (N.Y. 1976). Nevertheless, it can hardly be said that those state court opinions "clearly establish" the constitutional right asserted by Griffin in this case.

In other words, in this circuit there has been no "announcement of the rule establishing the right [that was] unambiguous and widespread, such that the unlawfulness of [Garrison's] particular conduct [would] be apparent . . . to reasonable public officials." Brady v. Dill, 187 F.3d at 116. Garrison was neither "plainly incompetent" nor did she "knowingly violate the law" when she initially denied Griffin's application for benefits. Malley, 475 U.S. at 341. She is, then, entitled to the protections afforded by qualified immunity.

Parenthetically, the court notes that, although she has not raised the point, Garrison is probably also shielded from liability by the absolute immunity afforded quasi-judicial actors. See, e.g., Calderon v. Connecticut, 2007 WL 3124717 (Oct. 24, 2007 D.Conn.) (department of labor officials who ruled against plaintiff's application for unemployment benefits were entitled to quasi-judicial immunity); Vance v. Watts, 2007 WL 924259 (C.D. Ill. March 27, 2007) (same); Madden v. Chattanooga City Wide Service Dept., 2007 WL 895708 (E.D. Tenn. March 21, 2007) (same); Howard v. Food Lion, Inc., 232 F. Supp. 2d 585 (M.D. N.C. 2002) (same). See generally Butz v. Economou, 438 U.S. 478 (1978); Bettencourt v. Bd. of Reg. in Med. of the Commonwealth of Mass., 904 F.2d 772 (1st Cir. 1990).

## Conclusion

It is unlikely that Garrison violated Griffin's First Amendment rights when she supportably determined that he had been discharged "for cause" and, therefore, concluded that he was ineligible for unemployment benefits - particularly since the process, once completed, resulted in an award of those benefits. Drawing too close an analogy between Griffin's case and those decided by the Supreme Court under the Free Exercise Clause to conclude that Garrison violated Griffin's constitutional rights would be problematic.  To do so would, presumably, mean that an employee discharged for cause for having engaged in otherwise lawful speech (e.g., neither threatening nor defamatory) that was, say, racist, or vulgar, or sexist, or insubordinate, would, nevertheless, enjoy a constitutionally protected right to receive state unemployment benefits.  An exception of that sort would substantially undermine the general rules that employees discharged "for cause" are ineligible for unemployment benefits, and that private employers are entitled to establish standards of decorum and conduct consistent with their business interests.

In any event, even if she erred in denying Griffin's application for benefits and even if her decision can be said to have violated Griffin's constitutional rights, Garrison is plainly entitled to qualified immunity (and, in all likelihood,

quasi-judicial immunity). So, for the reasons discussed, as well as those set forth in defendant's memoranda (document nos. 46-1 and 47-1), plaintiff's motion for summary judgment (document no. 44) is denied and defendant's motion for summary judgment (document no. 47) is granted. Garrison's supplemental motion for summary judgment raising essentially the same issues (document no. 52) is moot. The Clerk of Court shall enter judgment in accordance with this order and close the case.

    **SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 13, 2011

cc: John R. Griffin, Jr., pro se
    Karen A. Schlitzer, Esq.
    Nancy J. Smith, Esq.